HON. WILLIAM H. DE WITT, } Associate Justices.
HON. WILLIAM H. HUNT,

CLARK, ASSIGNEE, RESPONDENT, *v.* LINDSAY & COMPANY, (LIMITED), APPELLANT.

[Submitted November 18, 1896. Decided November 30, 1896.]

SALES OF PERSONALTY—*Delivery—Shipment.*—A contract for the sale of merchandise which requires the vendor to ship the goods free on board the cars, on or before a certain date, is complied with by the vendor when he places the goods on board the car at the designated point on that date and there is no implied obligation on his part to see that the carrier moves the car forward toward its destination before the expiration of the day named.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION on contract. The cause was tried before BUCK, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

This action is brought to recover damages sustained by plaintiff's assignor, one Pendleton, because of the failure of Lindsay & Co. to receive a car load of eggs and dressed poultry sold by Pendleton to the defendant in February, 1892. It is alleged by plaintiff that on February 11th, 1892, Pendleton sold and furnished to defendant 370 cases of eggs at the agreed price of twenty cents per dozen, amounting in all to $2,220; that the said agreed price was for the eggs delivered on board the cars in Lawrence, Kansas; that thereafter on February 13th, 1892, in addition to the eggs sold, Pendleton sold and furnished to defendant a quantity of dressed turkeys of the value, when delivered on board the cars at Lawrence, of $142.04; that defendant requested that the poultry be shipped in the same car with the eggs, and that under the contract the eggs and poultry were to be shipped on or before February 15th, 1892; that defendant was to pay the freight from Lawrence, Kansas, to its place of business in Helena, and plaint.ff's assignor was instructed by the defendant to ship via the Union Pacific Railway; that according to the contract and direction of the defendant, Pendleton shipped the eggs and poultry on February 15th, 1892, as directed and notified the defendant of the shipment on said date; that on the arrival of the eggs and poultry at Helena about February 23d, 1892, the defendant refused to unload them from the cars or pay for the same, or to have anything to do with the goods; that plaintiff was obliged to sell the same for the best prices he could get and thereby sustained loss.

The defendant denied the contract as alleged by plaintiff, and for further answer averred that about February 11th, 1892, Pendleton and defendant entered into an agreement whereby Pendleton was to sell to defendant the eggs and poultry mentioned in the complaint, and at prices therein

given; that by the terms of their contract it was expressly agreed that Pendleton should deliver the eggs and poultry free on board the cars on the Union Pacific Railway at Lawrence, Kansas, in such time that the same could be shipped and leave Lawrence on or before February 15th, and that the time of shipment and departure of the eggs and poultry was a material part of the contract; but that Pendleton failed to load the merchandise on board the cars at Lawrence in time to permit the same to be shipped and depart from Lawrence on or before February 15th, 1892, and that the said merchandise could not be shipped and depart from Lawrence before February 16th, and did not in fact leave until February 17th.

The plaintiff by replication denied that Pendleton failed to put the merchandise on board the cars at Lawrence so that the same could be shipped and depart therefrom on or before February 15th, 1893, and alleged that it was loaded at Lawrence in time so that it could have been shipped and have departed from Lawrence on February 15th, 1892. and alleged that the merchandise left Lawrence on February 16th, 1892.

The replication also denied that it was any part of the contract that Pendleton should cause the merchandise to depart from Lawrence on or before February 15th, 1892.

The case was tried to a jury and a verdict returned in favor of plaintiff, assessing his damages in the sum of $676.66. Judgment was entered on the verdict. Defendant moved for a new trial, which was denied. From the judgment and the order overruling the motion of a new trial the defendant appeals.

*Henry C. Smith,* for Appellant.

*Smith & Word,* for Respondent.

HUNT, J.—What was the contract entered into between the parties? If the respondent is correct, Pendleton did all he was obliged to do, when on February 15th, he placed the merchandise involved in good condition on board the railroad cars at Lawrence, Kansas, to be transported to Helena, Montana.

But if appellant, defendant, is correct, although it admits that the contract entered into between it and Pendleton is the same as set forth by Pendleton, it nevertheless avers it was agreed in and by said contract that the merchandise was to be delivered to the railroad company so that it could be shipped and leave Lawrence on or before February 15th, and that such shipment and departure were material parts of the contract.

Without reviewing the evidence, it is sufficient to say that the plaintiff's version of the agreement is fully supported. When plaintiff's assignor agreed to ship the goods on or before February 15th, presumably he meant only to deliver the goods on that date to the carrier for transportation on a regular line of transportation between the point of shipment and destination.     This was done.

The signification of the word "shipment" is uniform. The Century Dictionary defines "shipment" as "the act of dispatching or shipping; especially the putting of goods or passengers on board ship for transportation by water. A quantity of goods delivered at one time for transportation whether by sea or by land." (Black's Law Dictionary.)

There was, therefore, no implied obligation on the part of the plaintiff's assignor to see that the merchandise left on the 15th.     The argument of the appellant is very close to that advanced by defendants in the case of *Ledon* v. *Havemeyer*, 8 L. R. A. 245.     It was there contended that the word "shipment" meant a clearance of the vessel as well as putting the goods on board within the period allowed for shipment.     But the court held otherwise, saying :

"The words 'shipment' and 'shipped' are now used indifferently to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, over land as well as water, and imply with respect to carrying by land, a completed act, irrespective of the time or mode of transportation. (*Caulkins* v. *Hellman*, 47 N. Y. 452; *Fisher* v. *Minot*, 10 Gray 260; *Schmertz* v. *Dwyer*, 53 Pa. 335.)          ∗          ∗          ∗          ∗          ∗

"We have been referred to no authorities supporting the defendants' contention, and we believe it to be contrary to the invariable meaning of the word, as defined by lexicographers, as understood by the mercantile community generally or as laid down in the decision of the courts."

The court charged the jury in harmony with the law as above stated, and submitted to their determination all the evidence bearing upon the actual agreement between the parties. They were told that if they believed that the contract was in effect that the goods were to be shipped by Pendleton on or before February 15th, and that Pendleton placed the goods on board the cars of the Union Pacific Railway Company at Lawrence on the said 15th day of February, then they should find that Pendleton had complied with his part of the contract; but if they believed that the agreement was that Pendleton was to deliver the goods so that they could leave Lawrence on the 15th, and they were not delivered in time to let the cars go forward on that date, they should find for the defendant. They were further told that if, however, they believed Pendleton placed the goods on board the cars on the 15th so that they could have left Lawrence on that day, then Pendleton complied with his contract and the plaintiff could recover. Thus the facts and the law applicable were fairly submitted to the jury and their verdict for the plaintiff cannot now be disturbed.

We may say, too, that the appellant in the case is in no position to complain, for under the construction of the contract that it contends for, it could not recover, inasmuch as it clearly appears by the testimony that the car was loaded on the night of the 15th at Lawrence, in time to have enabled the carrier to move it forward toward its destination—hence if there was any negligence at all, it was on the part of the railroad company, and did not lie in a breach of plaintiff's contract with defendant. (Hutchinson on Carriers, § 89.)

There being no error in the record, the judgment and order will be affirmed.      *Affirmed.*

PEMBERTON, C. J., concurs.    DE WITT, J., not sitting.