McEWEN et al., Respondents, *v.* UNION BANK & TRUST
CO., Appellant.

(No. 2,411.)

(Submitted May 20, 1907.   Decided June 3, 1907.)

[90 Pac. 359.]

*Materialmen's    Liens—Foreclosure—Pleadings—Denials— Parties.*

Pleading—Reply—Denial on Information and Belief—Public Records.
    1.  *Semble:* It would seem that a reply denying any knowledge or information sufficient to form a belief as to the existence of public records is frivolous.

Same—Denial on Information and Belief.
    2.  Prior to amendment of the Act of 1899 (Laws, 1899, p. 142) by Session Laws of 1905, page 8, it was incumbent upon plaintiff to deny, in a reply, either generally or specifically, any new matter or counterclaim set up in the answer, and therefore, a denial, filed in September, 1902, in a suit to foreclose a materialman's lien, of any knowledge or information sufficient to form a belief as to the truth of certain allegations in a counterclaim was ineffective to put such allegations in issue.

Materialman's Lien—Foreclosure—Parties—Pleading—Issues.
    3.  Where, in a suit to foreclose a materialman's lien, a bank was joined as defendant under an allegation that it claimed some right or interest in the property, and answered, setting up a mortgage which had been foreclosed, that the property had been purchased by it at foreclosure sale, and that plaintiffs' claim was subsequent and inferior to the mortgage and the bank's title, such defendant was the real party in interest so far ·as the equitable feature of the case was concerned, and was entitled to insist that plaintiffs make out a case ·against it.

Same—When Material is "Furnished"—Delivery to Carrier.
    4.  Plaintiffs agreed to manufacture certain machinery and deliver same for shipment in "knocked-down" form f. o. b. cars at their place of business in the state of New York, and, at the consignee's option, to send men to put the machinery together. This option was never exercised. Shipment was made on June 6, 1900, the invoice being dated June 8th. The materials reached their destination in this state on June 18th. Plaintiffs filed their claim of lien on September 14th of the same year. *Held,* that the materials had been "furnished," within the meaning of that term as used in the statute relating to mechanics' and materialmen's liens (Code Civ. Proc., sec. 2131), on the day they were delivered, in accordance with the contract, on board cars on June 6th, and that by filing the claim on September 14th, following, more than ninety days after June 6th, the law had not been complied with and the lien did not attach.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

Action by Susan McEwen and others, doing business as Mc-Ewen Bros., against the Montana Pulp and Paper Company and the Union Bank and Trust Company. From a judgment in favor of plaintiffs, defendant Union Bank and Trust Company appeals. Reversed and remanded.

*Mr. James E. Murray,* and *Messrs. McBride & McBride,* for Appellant.

A sale f. o. b. cars means that the subject of the sale is to be placed on cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed, the title is to pass absolutely to the buyer and the property be wholly at his risk in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money. (*Vogt* v. *Shienebeck,* 122 Wis. 491, 106 Am. St. Rep. 989, 100 N. W. 822, citing *Neimeyer L. Co.* v. *Burlington R. Co.,* 54 Neb. 321, 74 N. W. 670, 40 L. R. A. 534; *Congdon* v. *Kendall,* 53 Neb. 282, 73 N. W. 659; *Capehart* v. *Furnam F. I. Co.,* 103 Ala. 671, 49 Am. St. Rep. 60, 16 South. 627; *Knapp Electrical Works* v. *New York I. W. Co.,* 157 Ill. 456, 42 N. E. 147; Benjamin on Sales, 6th ed., 682; 1 Mechem on Sales, par. 741, and note.)

All of above authorities declare that a sale f. o. b. cars so plainly indicates that the seller, without expense to the buyer, is to *deliver* the subject of the sale *on cars* ready to be taken out by the carrier, that the terms are not open to construction. (*Vogt* v. *Shienebeck, supra; Congdon* v. *Kendall,* 53 Neb. 282, 73 N. W. 659; *King* v. *Cleveland Ship-building Co.,* 50 Ohio St. 320, 34 N. E. 437.)

*Messrs. Walrath & Patten,* and *Mr. E. N. Harwood,* for Respondents.

Mr. Boisot, in his work on Mechanics' Liens, section 60, says: "Materials for a building are usually said to be furnished when they are delivered on the premises on which they are to be used.

Thus, where the statute gives a materialman a lien from the time the material is commenced to be furnished, his lien does not attach at the date that he commenced preparation of material in another state, but at the time when he delivered it at the building as required by his contract." (See, also, *Wentworth* v. *Tubbs,* 53 Minn. 388, 55 N. W. 543; *Mechanics' M. & L. Co.* v. *Denny H. Co.,* 6 Wash. 122, 32 Pac. 1073, following *Williams* v. *Chapman,* 17 Ill. 423, 65 Am. Dec. 669.)

He further says in the same section, that: "As a general rule, materials are held to be *furnished* when they are delivered at the building"; and cites *Milner* v. *Norris,* 13 Minn. 455. Those cases fully support the author's text, and there are others directly in point to the same effect. (*Smalley* v. *Gearing,* 121 Mich. 202, 79 N. W. 1114, 80 N. W. 797.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in the district court of Gallatin county by the plaintiffs, as copartners, against the Montana Pulp and Paper Company, a corporation, and the Union Bank and Trust Company, a corporation, to foreclose a certain alleged lien, for materials furnished by the plaintiffs to the first-named defendant for its paper-mill, at Manhattan, Montana.

The complaint sets forth that on the eighteenth day of June, 1900, plaintiffs furnished the materials mentioned, and that on the fourteenth day of September, 1900, they filed their claim for a lien with the county recorder. It further alleges that the defendant Union Bank and Trust Company claims some right or interest in the building and lands upon which the lien is claimed.

The defendants answered, putting in issue the date of the alleged furnishing of the materials, and the Union Bank and Trust Company set up affirmatively a mortgage given to it by the Montana Pulp and Paper Company, covering the property upon which the lien is claimed. The bank further alleged that said mortgage had been foreclosed, the property purchased by it at foreclosure sale, and that the claim of plaintiffs was subsequent and inferior to the mortgage and title of the bank.

The cause was tried without a jury, and the court found that the materials were furnished to the Montana Pulp and Paper Company, within ninety days prior to September 14, 1900, the date of the filing of the claim for lien, and a decree was entered in favor of the plaintiffs as prayed for. The court also adjudged that the lien of the plaintiffs was prior to any rights of the defendant Union Bank and Trust Company, and that corporation appeals from the decree to this court.

Plaintiffs move to dismiss the appeal, or, in lieu thereof, affirm the judgment of the court below, because they say: "That said Union Bank and Trust Company, sole appellant from said judgment, has not shown, by any proof upon the issues raised by its answer in said cause, and plaintiffs' reply thereto, set forth in the judgment-roll in said transcript, that it has any interest whatever in the property mentioned in said judgment from which it has appealed, for which reason the trial court from which said appeal is taken could not have lawfully found that said Union Bank and Trust Company had any interest whatever in said property, or adjudged any right in its favor touching said property, either superior to plaintiffs' lien thereon or otherwise; and no relief is adjudged against said appellant Union Bank and Trust Company in or by said judgment, except that it has no right or interest in said property mentioned in said judgment superior to plaintiffs' lien thereby foreclosed."

There is no merit in this motion. Let it be remembered that the plaintiffs brought this defendant into court under an allegation that it claimed some right or interest in and to the building and premises described in the complaint. The bank answered, as hereinbefore stated, setting up a counterclaim, the only traverse of which was a denial of any knowledge or information sufficient to form a belief as to whether the allegations therein were true. We doubt whether the reply was good in any event, as it seems to us frivolous to deny any knowledge or information sufficient to form a belief as to the existence of public records, but, at any rate, at the time this reply was filed, there was no provision of law for denying, in a reply, any

knowledge or information sufficient to form a belief of facts alleged in an answer.

Section 720 of the Code of Civil Procedure was amended by Laws of 1899, page 142, to read as follows: "Where the answer contains a counterclaim, or any new matter, the plaintiff, if he does not demur, shall within twenty days after the service and filing of the answer, reply to such counterclaim or new matter denying, generally or specifically, each allegation controverted by him and he may allege, in ordinary or concise language, and without repetition, any new matter not inconsistent with the complaint constituting a defense to such counterclaim or new matter in the answer." It will be seen that, under this section as amended, it was necessary to deny new matter in a reply, either generally or specifically, and there is no provision for any other form or denial. The reply in this case was filed on September 2, 1902. The legislature of 1905 (Laws 1905, p. 8, chap. 5) restored the provision as to denials of any knowledge or information sufficient to form a belief; but in the meantime such a denial was ineffective to put affirmative allegations, in an answer, in issue.

Aside from this, the record discloses that, so far as the equitable feature of this case is concerned, the defendant Union Bank and Trust Company was the real party in interest, and had the same right as any other defendant to insist that plaintiffs should make out a case against it.

Coming, then, to the main question in the case, we find that our statute relating to mechanics' liens (section 2131 of the Code of Civil Procedure) reads, in part, as follows: "Every person wishing to avail himself of the benefits of this chapter, must file with the county clerk of the county in which the property * * * is situated, and within ninety days after the material or machinery * * * has been furnished * * * a just and true account of the amount due him," etc.

We are to determine when this machinery was furnished, within the meaning of the law. The negotiations for the sale

of the machinery were initiated by the plaintiffs in a letter, which reads as follows:

"We propose to make you one tank 8′ diameter 14′· long of ½″ steel with manhole 11″x16″ and 4-3″ outlets, as per plan furnished us without saddles for the sum of six hundred and thirty-five dollars ($635). Two hot water tanks 16′x18′x10′ high with manhole 11″x16″ and 2-6″ outlets, as per plan furnished, for the sum of seven hundred and twenty dollars ($720) each. One tank 36′ 6″ long x 11′ 8″ wide x 5′ high, of ⅜″ steel for the sum of six hundred and twenty-five dollars ($625). Four tanks, 9′ diameter x 10′ high, of 3/16″ steel, and furnish same with four steps, 8 gears, 16 legs, 4 levers for agitators, 50′ of 3½″ shafting, 66′ of 3″ shafting, 4-3″ flanges, 4-3″ brass-ball joints 6-3-1-2″ flat bottom boxes, 4-3″ flat bottom boxes, for the sum of eighteen hundred and fifty dollars ($1,850). One strainer, 30″ diameter x 60″ high, of ¼″ steel, with handles, and punched with ¼″ holes, for the sum of thirty-eight ($38) dollars. · All f. o. b. cars Wellsville, N. Y., all of the tanks except the 8′x14′ to be shipped in knocked-down form. On the arrival of the above at Manhattan you are to notify us, and we will send men to rivet them together. You are to pay all freight on material and tools, all R. R. fare of our men going and returning, also for men's time while going to and returning from Manhattan and board while putting up the tanks as well as while going and coming, and all expenses necessary (of men) while away from home. If this is satisfactory please ·send us the order for the above at once, and oblige,

"Yours respectfully,

"McEWEN BROS."

The proposition above set forth was accepted by the defendant Montana Pulp and Paper Company. The testimony shows that shipment of all the materials for which a lien is claimed was made from Wellsville, New York, on or prior to June 6, 1900. The contract was to deliver f. o. b. cars at Wellsville. The materials actually reached Manhattan on or about the eighteenth day of June. The invoice for the same is dated

Wellsville, June 8, 1900. The option extended to the paper company of having the plaintiffs send out men to rivet the tanks together was never exercised.

In the case of *Clark* v. *Lindsay & Co.*, 19 Mont. 1, 61 Am. St. Rep. 479, 47 Pac. 102, this court held that a contract for the sale of merchandise which requires the vendor to ship the goods free on board the cars, on or before a certain date, is complied with by the vendor when he places the goods on board the car at the designated point on that date, and there is no implied obligation on his part to see that the carrier moves the car forward toward its destination before the expiration of the day named.

In the case *Tibbetts* v. *Moore,* 23 Cal. 208, it was held that the lien of a materialman accrues at the time he has the materials. which he has contracted to furnish, ready for delivery at the place where he has agreed to deliver them. In that case the court said: "The question is whether or not the word 'furnished,' as used in the statute, means 'delivered at the building' in the construction of which the materials are furnished. We think that such is not its reasonable construction."

In the case of *Watson Coal & Mining Co.* v. *James,* 72 Iowa 184, 33 N. W. 622, the court held that to furnish coal on the cars at a certain place meant to deliver the coal on the cars at that place.

The case of *Congdon* v. *Kendall,* 53 Neb. 282, 73 N. W. 659, is very similar to the one we are considering. In that case the court held that, under a contract to make certain machinery and deliver it f. o. b. cars at a designated place for a stipulated sum, the machinery is furnished, within the meaning of the Nebraska mechanic's lien law, when it is delivered in accordance with the contract on board the cars at the place named, without expense to the purchaser, and, to obtain a lien therefor, the claim for a lien must be filed within four months from that time. (See, also, *Great Western Mfg. Co.* v. *Hunter,* 15 Neb. 32, 16 N. W. 759; *King* v. *Shipbuilding Co.,* 50 Ohio St. 320, 34 N. E. 436.)

We find, therefore, that this material having been furnished on or before June 6th, more than ninety days prior to September 14th, when the claim for a lien was filed, the mechanic's lien law was not complied with, and the lien did not attach.

Respondents contend that their undertaking was to make the tanks described in the contract from the materials shipped, and that the tanks were therefore not furnished at Wellsville, but at Manhattan. We cannot agree with this reasoning. It seems plain from their letter that they contracted to make the tanks at Wellsville, and ship the same in "knocked-down form" to Manhattan.

The judgment and decree of the district court of Gallatin county is reversed, and the cause remanded, with instructions to dismiss the complaint as to the appellant Union Bank and Trust Company.

*Reversed and remanded.*

Mr. Chief Justice Brantly concurs.

Mr. Justice Holloway, deeming himself disqualified, did not hear the argument, and takes no part in this decision.

Rehearing denied June 24, 1907.