GEER COMPANY, APPELLEE, V. LEROY B. WOLCOTT ET AL., APPELLEES: ALLBRIGHT-NELL COMPANY ET AL., APPELLANTS.

FILED JANUARY 20, 1933. No. 28352.

*Prince & Prince* and *C. W. Greenfield,* for appellants.

*Lloyd W. Kelly, B. J. Cunningham* and *Cleary, Suhr & Davis, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ., and RAPER, District Judge.

GOOD, J.

Plaintiff brought this action to foreclose a mechanic's lien on a rendering plant, consisting of a building and machinery therein, and the leasehold interest in realty on which the building was situate. Defendant Wolcott was the owner of the leasehold and made default. A number of the defendants filed cross-petitions and asked foreclosure of liens for material furnished for the construction of the building and for labor in constructing the building and installing the machinery. The Allbright-Nell Company (hereinafter referred to as the company) filed an answer and cross-petition, in which it asserted

ownership of the machinery under a conditional sales contract, and asked that it be adjudged to be the owner of such machinery, and that it be not subject to the liens of the plaintiff and cross-petitioners. Defendant Simonsen, through some arrangement with Wolcott, not clearly disclosed, purchased from the company the machinery for installation in the plant and paid something over $3,000 on the purchase price, leaving a balance of $4,000 unpaid to the company.

The trial resulted in a decree for plaintiff and the several cross-petitioners, asserting liens for material and labor upon the entire plant, and denying any relief to Simonsen and the company. The latter two have appealed.

It is conceded that the only controversy requiring our attention is whether the company is the owner of the machinery installed and is entitled to remove it from the building, or have a lien thereon for the unpaid portion of the purchase price.

The leasehold interest consisted of a specific part of the right of way of the Union Pacific Railroad Company, and was situated some distance north of the city of Grand Island in Hall county.

From the record it appears that Simonsen, who lived in Iowa, was interested in other rendering plants and had some knowledge of the construction and operation of such plants; that, through some arrangement, not fully disclosed, between himself and Wolcott, it was agreed that a rendering plant should be constructed upon the leasehold. Simonsen arranged with the company for the purchase of the machinery to be installed. Wolcott entered into an agreement with plaintiff and the other parties, claiming liens for material and labor, for the construction of the building and installation of the machinery. The machinery for the equipment of the plant was furnished by the company under a contract with Simonsen, whereby the title to the machinery was to remain in the company until the purchase price was fully paid. The con-

ditional sales contract between the company and Simonsen was not filed nor recorded in Hall county. The plaintiff and others, claiming liens for labor and material, had no knowledge of the conditional sales contract, or that the machinery was not paid for. The building was especially designed and constructed for the installation of the particular machinery which was furnished by the company.

There is a conflict in the evidence as to the extent and manner in which the several items of machinery are annexed or attached to the realty. It was agreed by all the parties that the trial judge should visit and examine the premises. Under such circumstances, we feel bound by the findings of the trial court with respect to the extent and manner in which the several articles of machinery were attached to the realty.

The trial court found: "Leroy B. Wolcott erected the said mill, factory, building, and plant, upon said real estate; that the same consisted of a main building constructed of lumber, cement blocks, poured cement, and other materials, with approaches and out-buildings appurtenant thereto; that rendering plant and factory machinery, and equipment, were, during said time, installed by the said Leroy B. Wolcott, consisting of rendering cooker, motor, press, pumps, Ancocracker boiler, grinder, winch, stoker, and fittings and appliances connected therewith; that said machinery and equipment were and now are firmly and permanently annexed and attached to said mill, plant and factory, and to said buildings and foundations thereof, and to the real estate upon which it is situated as aforesaid, that the said machinery and equipment were and are adapted to the use of said mill, factory, and plant, and that it was annexed thereto for permanent use in connection therewith, and with the intention on the part of all persons interested in the said machinery and equipment that the same should be and become a part of the said mill, plant, and factory, and of the said leasehold in said real estate, and that the said machinery and

equipment have been at all times thereafter and now are an integral part of the said mill, plant, and factory, and the leasehold interest in the said real estate." The court further found that the company sold all of said machinery under an agreement that the same should be installed in the said plant.

An examination of the record convinces us that these findings made by the trial court are in accordance with and supported by the evidence. The plaintiff and other lienors, furnishing material and labor for the construction of the building and installation of the machinery, performed their part of the contract with Wolcott, and have not been paid therefor. Within the time prescribed by statute, they filed liens for the materials furnished and services rendered. No question is raised as to the amounts due the respective claimants for liens, and the evidence shows that they were unaware that the machinery was not fully paid for, or that it was purchased under a conditional sales contract. The only question is as to whether the liens of plaintiff and other lien claimants extend to and cover the machinery furnished by the company and installed in the building.

Appellants contend that the statute providing for the filing of a conditional sales contract in the office of the county clerk was intended for the protection only of innocent purchasers, execution and attaching creditors, and further contend that, since the plaintiff and other lien claimants are not in these classes, they are bound by the terms of the conditional sales contract between the company and its vendee. Many decisions from this and other courts are cited and relied upon. Many of the cases cited relate to cases where the property, which was the subject of the conditional sales contract, retained its distinctive character as personalty. Many of the others relate to cases where the opposing claimant had either actual or constructive notice of the conditional sales contract. As we shall hereinafter see, these cases are not applicable to the situation presented by the record in this case.

Conditional sales contracts are entered into primarily for the protection of vendors of personalty, where the parties to such contracts contemplate that the property shall retain its character as personalty. They are not intended to and cannot apply to such articles of personalty as are sold for the purpose of being incorporated into a building and becoming a part of the realty. Lime, cement, brick, lath, nails and many other such articles might be mentioned which may be the subjects of a conditional sales contract, so long as it is contemplated by the parties to the contract that such items shall retain their character as personalty; but when it is contemplated and intended that the vendee shall use these articles in the construction of a permanent structure, to become a part of the realty, it is evident that they cannot apply. In such cases, the vendor may protect himself by filing a mechanic's or materialman's lien, but cannot retain title to the articles of personalty, because such articles, with the consent of the vendor, have lost their identity as personalty. From personalty they have been transformed into real estate, and where this was the intention of the parties, the conditional sales contract would cease to operate or have any effect after the transformation from personalty to realty had occurred.

There is a class of personal property which never becomes realty. As to such property we think the general rule is that the vendor under a conditional sales contract may retain the title and the right to repossess these articles from the vendee, or any one else, except only innocent purchasers, execution and attaching creditors, without notice, actual or constructive.

There is still another class of personal property, such as the machinery in the instant case, which may be properly termed, when placed in a building, trade fixtures, and which, as to certain persons, would remain personalty, but, as to others, would become realty. The rule is that, if such fixtures are placed in a building by a tenant and not intended to remain therein after the expiration

of his tenancy, they do not become a part of the realty and may be removed by the tenant, if, in so doing, no substantial injury is done to the freehold. In the instant case, the machinery was furnished with the understanding that it would be incorporated into a rendering plant for permanent use therein by the owner of the building. It was contemplated by all parties that it should become a part of the real estate. However, as against the vendee or those having notice, either actual or constructive, of the conditional sales contract, it may be that the vendee could retain title to the articles and retake them by replevin, if in so doing no substantial injury would result to the freehold. On the other hand, where such machinery was placed in the building, with the intention of vendor and vendee that it should remain there permanently and become a permanent part of the manufacturing plant, it would become a part of the realty as to all persons who had no actual or constructive notice of the contract.

In the instant case, plaintiff and defendant lienors furnished material and labor in the erection of the building and installation of the machinery therein for a permanent rendering plant, without notice, either actual or constructive, of any conditional sales contract between the company and its immediate vendee. As to them, the machinery became and was a part of the real estate, and they are entitled to a lien thereon.

The applicable rule is: As to lienors without notice, either actual or constructive, of a conditional sales contract, trade fixtures, permanently affixed to the realty, become a part thereof and subject to mechanics' liens, unaffected by such conditional sales contract. The views herein expressed find support in the following authorities: 26 C. J. 688; 40 C. J. 278; 11 R. C. L. 1062, 1063, 1064, secs, 6, 8, 9; *Great Western Mfg. Co. v. Hunter Bros.*, 15 Neb. 32; *Frost v. Schinkel*, 121 Neb. 784; *Washburn v. Inter-Mountain Mining Co.*, 56 Or. 578; *Northwestern Lumber & Wrecking Co. v. Parker*, 125 Minn. 107; *Geppelt v. Middle West Stone Co.*, 90 Kan. 539; *King v. Title Trust Co.*, 111 Wash. 508.

In *Great Western Mfg. Co. v. Hunter Bros., supra,* in the course of the opinion it was said (p. 38): "Again, the vendor's lien or ownership of the machinery reserved by the terms of the contract could only exist so long as the machinery remained personal property, and ceased upon the same being attached to the freehold and becoming a fixture. Hunter Bros. having attached this machinery to their elevator (with the consent of the vendor), it ceased to be personal property, and the reserved ownership of the vendor therein ceased to operate *eo instanti* with the act which entitled said vendor to a lien on the elevator therefor."

The company might have protected itself from loss either by filing in the proper office a copy of the conditional sales contract or by perfecting a materialman's lien, as provided by statute. It did neither. Its loss, if any, is due to its failure to take advantage of the rights conferred by statute.

We are convinced that the decree entered by the trial court is right, and it is

AFFIRMED.